United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| STMICROELECTRONICS, INC. | § | |
| | § | |
| V. | § | CASE NO. 4:05CV45 |
| | § | (Judge Schneider/Judge Bush) |
| SANDISK CORPORATION | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Sandisk and STM have filed Motions for Summary Judgments on the issue of whether Toshibia's License Agreement with STM insulates Sandisk from STM's infringement claims as to the '626 and '184 patents. (Dockets No. 289 and 347).

**Facts**

The effective date of the cross Licensing Agreement is March 9, 1998. In the relevant portions of the License Agreement, STM grants to Toshiba and its subsidiaries a non-exclusive, non-transferable, royalty free, *world wide* license, without right to sub-license third parties, under ST PATENTS to make, HAVE MADE, use, lease, sell, offer for sale, *import,* or otherwise dispose of *Licensed Products*, and to use any methods covered by ST PATENTS, for the lives of ST PATENTS. (Para. 3.1) (emphasis added).

The parties appear to agree that the '626 and '184 patents fit within the definition of ST PATENTS and are covered by the License Agreement. Sandisk argues that Toshiba manufactures the accused products for two entities: Flash Vision ("FV") and Flash Partners ("FP"). Without discussing the history or organization of the two companies, there appears to be no factual dispute that Toshiba and SanDisk are joint owners of these two entities. There is also little dispute that the

1

ownership is structured so Toshiba owns 50.1% of the entities and SanDisk owns 49.9% of the entities. In its brief, SanDisk states that the joint operating agreements of both entities provide that each unitholder shall be entitled to one vote for each Unit owned by such unitholder. SanDisk states that neither FV, FP nor SanDisk manufacture any of the accused products under the two patents. SanDisk then states that it ultimately obtains these products from FV, FP or Toshiba. If FV and FP are truly subsidiaries of Toshiba, then the doctrine of patent exhaustion may very well preclude STM's suit for infringement as to the two patents noted above.

Key to the determination of the question of subsidiary is the definition of subsidiary as contained in the License Agreement. For relevant purposes, a subsidiary is defined in the License Agreement as a corporation, company or other *legal entity more than 50% of whose outstanding shares or securities (representing the right to vote for the election of directors or other managing authority) are...........owned or controlled, directly or indirectly, by a party hereto.* STM reads the license as requiring that the right to vote must be by a majority or greater and that in this case the entities each have only three designated members on the boards of the entities. Therefore, STM argues that since Toshiba and SanDisk each has only a 50% voting interest in the entities, such voting interest fails to meet the test of a subsidiary under the License Agreements.

## Standard

Summary judgment is appropriate in patent cases, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as matter of law. FED. R. CIV. P. 56(c); *Nike Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994). Summary judgment is also appropriate on license issues if the patentee is unable to set forth specific facts as to why the license should not apply. *See generally, Cyrix Corp. v. Intel Corp.*, 879 F.Supp. 666, 668

(E.D. Tex. 1995), *aff'd* 77 F.3d 1381 (Fed. Cir. 1996). Generally, licensing agreements, like other contracts, are interpreted under state law. *Fantastic Fakes, Inc. v. Pickwick Int'l, Inc.*, 661 F.2d 479, 483 (5th Cir. Unit B 1981). The License Agreement does not specify a choice of law application. Therefore, the Court believes that the law of the forum should control especially in light of the fact that performance of the License Agreement is in part called for in Texas. *See generally Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616 (5th Cir. 2005). When interpreting unambiguous contracts, Texas courts "give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense," in order to "enforce the unambiguous document as written." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). The goal of interpretation is to give effect to the parties' intentions as expressed in the contract. *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 727-28 (Tex. 1981). Thus,"[i]n the ordinary case, the writing alone will be deemed to express the intention of the parties." *Id*. at 728. "Only where a contract is first found to be ambiguous may the courts consider the parties' interpretation." *Id*. at 732. Texas courts read the contract as a whole and give each part of the contract meaning. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). Interpretation of unambiguous contracts is a question of law. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). Neither party contends the contract is ambiguous.

## Analysis

STM first argues that for a sale to exhaust a United States patent, the sale must occur "under" the United States patent. STM relies on *Jazz Photo Corp. v. ITC*, 264 F.3d 1094, 1102 (Fed. Cir. 2001) in support of its position. As STM asserts, international sales do not exhaust United States patents. *Fuji Photo Film Corp. v. Jazz Photo Corp.*, 394 F.3d 1368, 1376 (Fed. Cir. 2005). STM

argues that SanDisk must prove that the accused products were first sold in the United States and that the License Agreement granted Toshiba and its subsidiaries an unconditional license to STM's patents. STM states that all sales from the foundry to FP with resale to SanDisk occur in Japan. Thereafter, the products are always shipped to Taiwan or China-never to the United States. STM contends the transactions are nearly identical with FV. As to FV, SanDisk can order products directly from the Toshiba foundry. However, all sales are consummated in Japan.

The patent exhaustion doctrine, commonly referred to as the first sale doctrine, is triggered by an unconditional sale. *LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1369 (Fed. Cir. 2006), *See Mitchell v. Hawley,* 83 U.S. 544, 547 (1873). "[A]n *unconditional* sale of a patented device exhausts the patentee's right to control the purchaser's use of the device thereafter. The theory behind this rule is that in such a transaction, the patentee has bargained for, and received, an amount equal to the full value of the goods. This exhaustion doctrine, however, does not apply to an expressly conditional sale or license." *Id*. at 1369. The Court views the license in this litigation as an unconditional world wide license except Toshiba cannot sub-license third parties and with respect to foundry activities and ASIC activities to manufacture products for a third party. The license further provides that the grant shall only include the manufacturing activity, and to the portion of the design, if any, by or *for* Toshiba or its subsidiaries, and shall exclude the portion provided or instructed by the third party. (Emphasis added)

SanDisk contends that Toshiba manufactures the accused products for FV and FP. There appears to be no dispute as to this fact. SanDisk also states that FV and FP are subsidiaries of Toshiba. The Court finds that if FV and FP are subsidiaries of Toshiba, then paragraph 3.2 does not apply in this case since Toshiba in effect is manufacturing for its subsidiary and not a third party as

4

contemplated by the license. This is further bolstered by the language of paragraph 3.2 that the portion of the design for Toshiba or its subsidiaries contemplates that as long as the manufacturing activity is performed for Toshiba's benefit or that of a subsidiary, it matters not where the design originated. The only restriction is when Toshiba manufactures products for a third party which, by a clear reading of the license, excludes manufacturing activities related to products for Toshiba or its subsidiaries.

Two sophisticated companies sat down and came up with a definition for subsidiary. In the license, the term includes a corporation, company or legal entity. FV and FP qualify thus far. The definition goes on to state that more than 50% of the company's outstanding shares or securities *represent* the right to vote for the election of directors or other managing authority, and that the shares are owned or controlled, directly or indirectly by a party to the agreement. Thus, FV and FP qualify as to the third requirement. The shares are owned or controlled, directly or indirectly by Toshiba. The only issue then is whether the more than 50% share requirement represents the right to vote for the election of directors or other managing authority. The Court finds that it does. STM argues that piercing through Toshiba's and SanDisk's agreements as to FV and FP demonstrates that each party has a 50% vote for directors; therefore, FV and FP are not subsidiaries contemplated by the license. There is no dispute that Toshiba owns 50.1% of FV and FP. There is no requirement in the license that Toshiba has to vote 50.1% of its shares. It must only have more than 50% outstanding shares representing the right to vote, not that it must vote more than its 50% share. The determinative factor is the ownership of shares that represent the right to vote for the subsidiary's managing authority. The only requirement is that Toshiba have more than 50% of the shares in its subsidiary which represents a right to vote however that right may be defined. Majority ownership

does not necessarily mean majority rule, although it could.

Absent STM's argument that the first sale must occur in the United States, it appears that a plain reading of the License Agreement warrants summary judgment on SanDisk's affirmative defense. Therefore, the Court is left with only one question, does the patent exhaustion doctrine apply where United States patents are covered in a world wide license even when the first sale occurs outside the United States? As a general rule, to invoke the protection of the first sale doctrine, the authorized first sale must have occurred under the United States patent. *See Boesch v. Graff,* 133 U.S. 697, 701-703 (1890) (lawful foreign purchase does not obviate the need for a license from the United States patentee before importation into and sale in the United States). The *Jazz Photo* case does not stand for the proposition that only sales within the United States can trigger the doctrine when there is a valid license covering the products. STM gave Toshiba a license in all types of patents with respect to the licensed products *in all countries of the world.* All the countries of the world includes the United States of America. Therefore, Toshiba (or its subsidiaries) had the right to sale any of the licensed products under the United States Patents '626 and '184 in the United States or anywhere in the world.

The Court finds that SanDisk's Motion for Summary Judgment on its Affirmative Defenses as to the License Defenses for '626 and '184 Patents should be granted and STM's Motion for Summary Judgment on SanDisk's License Defenses should be denied.

## **Recommendation**

It is the Court's recommendation that SanDisk's Motion for Summary Judgment on its Affirmative Defenses as to the License Defenses for '626 and '184 Patents be granted (Docket No.

289) and STM's Motion for Summary Judgment on SanDisk's License Defenses be denied (Docket No. 347).

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 23rd day of March, 2007.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE